UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                        No.    CV 16-371 WJ/GJF
                                                              CR 12-155 WJ

ANGELO GUTIERREZ,

    Defendant-Movant.

### **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Defendant Angelo Gutierrez's ("Defendant's") "Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255" ("Motion"). ECF No. 10.[1] The United States has filed a Response [ECF No. 13] and Defendant has filed a Reply. ECF No. 16. Having reviewed the briefing and being fully advised, I recommend the Motion be denied because Defendant knowingly and voluntarily waived any collateral attack upon his conviction under 28 U.S.C. § 2255, and *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551 (2015), which was decided after the plea hearing in this case, does not affect Defendant's waiver.[2]

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    **A. The Crimes and the Charges**

On October 11, 2011, K-Mart Loss Prevention Officers ("LPOs") observed Defendant and his brother, Anthony Gutierrez ("Anthony"), working together to shoplift multiple digital

---

[1] Unless otherwise identified, all docket citations are to CV 16-371 WJ/GJF.

[2] Before issuing this PFRD, I considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because the outcome of this Motion turns on matters of law and its disposition requires no further factual development, I concluded that no evidentiary hearing was necessary.

1

video discs ("DVDs") and a backpack. Pre-Sentence Report ("PSR") ¶¶ 9-12.[3] Anthony entered the store, secreted DVDs in a backpack, placed the backpack in a shopping cart, and after initially exiting the store without the backpack, re-entered the store and exited with the backpack. *Id.* ¶¶ 10-12. After Anthony exited the store, an LPO pursued him and grabbed the backpack, which caused Anthony to fall with the LPO on top of him. *Id.* ¶ 12. During the subsequent struggle, Defendant struck the LPO on top of the head with what was later identified as a Lorcin, model L380, .380 caliber semiautomatic pistol. *Id.* By then, another LPO had caught up to the group, and both Defendant and Anthony were physically struggling with both LPOs. *Id.* During that struggle, an LPO saw the firearm fall out of Defendant's hand and land underneath Anthony. *Id.* Anthony then grabbed the firearm, and observing Defendant being detained by one of the LPOs, loaded a round into the chamber of the firearm, pointed the firearm at the LPOs, and demanded that they release Defendant. *Id.* An LPO reported that Defendant screamed at his brother to "shoot these mother f------!" *Id.* Anthony ordered the LPOs to release Defendant, and when they did, Defendant grabbed the backpack and Anthony maintained possession of the firearm while they ran away. *Id.* Defendant and Anthony were later apprehended on the campus of a local community college. *Id.* ¶¶ 13-14.

On January 26, 2012, Defendant was charged with Conspiracy to Commit Interference with Interstate Commerce by Robbery (Count 1), in violation of 18 U.S.C. § 1951(a); Interference with Interstate Commerce by Robbery and Violence and Aiding and Abetting (Count 2), in violation of 18 U.S.C. §§ 1951(a) and 2; and Using, Carrying, and Possessing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, and Aiding and Abetting (Count 3), in violation of 18 U.S.C. §§ 924(c) and 2. Indictment 1-3, ECF No. 2, CR 12-155.

---

[3] Unless otherwise noted, all citations are to the amended PSR dated May 20, 2013.

### B. The Presentence Investigation Report

A Form 13 Presentence Investigation Report was disclosed on February 15, 2013, and revised on May 20, 2013. PSR 1. The PSR confirmed that Defendant did not have any prior felony convictions. *Id.* ¶ 16. According to the PSR, the guideline sentence for a violation of 18 U.S.C. § 924(c)(1) was the same as the minimum term of imprisonment required by statute, which was 84 months, the agreed-upon sentence of in Defendant's plea agreement. *Id.* ¶ 27; Plea Agreement, ECF No. 97, CR 12-155 at ¶ 3.

### C. The Plea Agreement

On June 17, 2013, Defendant pled guilty to the § 924(c) charge in Count 3. In the plea agreement, the parties agreed to a term of imprisonment of 84 months, with the United States agreeing to dismiss Counts 1 and 2. *Id.* ¶¶ 4, 13. The plea agreement also included a section called "Waiver of Appeal Rights," which provided:

> [T]he Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence . . . within the statutory maximum authorized by law and imposed in conformity with this plea agreement. *In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.*

*Id.* ¶ 12 (emphasis added).

As part of the plea agreement, Defendant's counsel acknowledged that she had "carefully discussed every part of this Agreement with my client." *Id.* at 9. Defendant further attested:

> I understand the terms of this Agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guideline provisions, and of the consequences of entering into this Agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

*Id.*

### D. The Change of Plea and Sentencing Hearing

During the plea colloquy, during which Defendant answered the Court's questions under oath and subject to the penalty of perjury, Defendant denied being under the influence of any drugs or alcohol, or having any condition that interfered with his understanding of the proceedings. Plea Hr'g Tr. 3:4-9, 17-22, ECF No. 81. Defendant also told the Court that he had read the plea agreement and discussed it with his attorney before signing it. *Id.* 4:20-24. Defendant twice stated that he understood the terms of the plea agreement. *Id.* 5:3-5, 14-16. The Court twice confirmed with Defendant that he and the United States had agreed to a specific sentence of 84 months. *Id.* 6:5-9, 8:6-10. The Court also confirmed with Defendant that he understood that he was pleading guilty to Count 3 of the indictment. *Id.* 7:1-4.

The Court asked Defendant whether he understood "the possible consequences of entering into this Plea Agreement," and Defendant said yes. *Id.* 10:22-25. Crucially for Defendant's Motion, the Court asked Defendant whether he realized that as part of the plea agreement, Defendant was "waiving or giving up [his] right to appeal this plea - - to appeal the sentence as long as I impose the agreed-upon sentence?" *Id.* 12:9-12. Defendant stated, "Yes." *Id.* 12:13.

After Defendant was advised of his trial rights, *id.* 12:14-14:6, and after Defendant confirmed the factual basis supporting his plea, *id.* 15:4-16:21, the Court accepted Defendant's guilty plea, finding that:

> [Defendant] is fully competent and capable of entering an informed plea, that the Defendant is aware of the nature of the charges and the consequences of the plea, and that the Defendant's plea of guilty to Count 3 of the Indictment, the count that's covered in this Plea Agreement, is a knowing and voluntary plea, supported by an independent basis in fact containing each of the essential elements of the offense charged in Count 3.

*Id.* 17:17-18:1. Defendant's counsel confirmed that she and Defendant had read the Presentence Report prior to the plea hearing, and that her client "[was] in agreement with it." *Id.* 18:7-13. Defendant's counsel further confirmed that there were no objections or corrections to the plea agreement. *Id.* 18:14-16. The Court proceeded to sentencing the same day, and both parties asked the Court to impose the agreed-upon sentence of 84 months. *Id.* 20:1-8. The Court then sentenced Defendant to 84 months' imprisonment, in accordance with the plea agreement. *Id.* 21:1-3. As a final matter, the Court specifically found that "pursuant to the plea agreement, the Defendant waives the right to appeal the sentence." *Id.* 24:22-24.

The Court entered its final judgment on June 27, 2013. ECF No. 102. Defendant did not file a direct appeal. Instead, on April 29, 2016, Defendant filed his original Motion to Vacate and Correct Sentence under 28 U.S.C. § 2255 [ECF No. 1], which was later amended on June 24, 2016 [ECF No. 6] and again on October 28, 2016. ECF No. 10. It is this final version that is operative and the only one that I have analyzed.

## II. ARGUMENTS

### A. Defendant's Claims

Defendant argues in his Motion that robbery under 18 U.S.C. § 1951(b) is not a "crime of violence" under 18 U.S.C. § 924(c)(3). Def.'s Mot. 16-18. Section 924(c)(3) defines "crime of violence" as a felony that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," which is referred to as the force clause, "or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," which is referred to as the residual clause.

Defendant principally relies on *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551

(2015), which invalidated the residual clause of 18 U.S.C. § 924(e)(2)(B). Def.'s Mot. 6-9. Defendant contends that, because the language in the residual clause of § 924(c)(3)(B) is so similar to that in the residual clause of § 924(e)(2)(B), the former is now as constitutionally infirm as the latter. *Id.* Defendant further asserts that, because Hobbs Act robbery is not a crime of violence under the force clause of § 924(c)(3)(A) and because the residual clause of § 924(c)(3)(B) has implicitly been invalidated by *Johnson*, "no legal basis exists" for Defendant's conviction, and Defendant requests that the Court vacate his conviction and sentence. *Id.* at 19.

### B. The Government's Response

The United States argues that Defendant waived his right to collaterally attack his conviction, and that his waiver is enforceable. Pl.'s Resp. 2-6, ECF No. 13. The United States also argues that *Johnson* has no effect on Defendant's conviction under 18 U.S.C. § 924(c) because *Johnson* invalidated the residual clause only under 18 U.S.C. § 924(e), which is substantially different from its counterpart in § 924(c). *Id.* at 7-9. In particular, the United States asserts that § 924(c)(2)(B) "is not unconstitutionally vague because it is narrower and its language creates far less uncertainty with respect to the degree of risk it takes for a predicate crime to qualify as a crime of violence." *Id.* at 8-9.

### C. Defendant's Reply

In reply, Defendant argues that enforcing the waiver of his collateral attack rights would result in a miscarriage of justice under *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015) and *United States v. Daugherty*, No. 07-CR-87-TCK, 2016 WL 4442801 (N.D. Okla. Aug. 22, 2016) (unpublished). Def.'s Reply 7-10. Defendant further argues that, under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc), such a miscarriage of justice bars enforcement of the waiver. *Id.* at 8.

## III.   LEGAL STANDARD GOVERNING WAIVERS

A "waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). However, "the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights." *Id*. In other words, "[a] plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel *challenging the validity of the plea or the waiver*." *Id.* at 1187 (emphasis added).

Therefore, in reviewing whether to enforce the waiver of appellate or collateral attack rights, the court must determine: (1) whether the disputed collateral attack falls within the scope of the waiver of collateral attack rights; (2) whether the defendant knowingly and voluntarily pleaded guilty and waived his collateral attack rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325-1327.

When addressing the first prong of the analysis and determining a waiver's scope, a court must "strictly construe [the waiver] and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate [and collateral attack] rights." *Id*. at 1325. On the second prong, the defendant bears the burden of presenting evidence that he did not knowingly and voluntarily enter into the plea agreement or understand the waiver of collateral attack rights. *Id.* at 1329 (citing *United States v. Edgar*, 348 F.3d 867, 872-73 (10th Cir. 2003)). And on the third and final prong, a court will enforce the waiver unless it finds that doing so would constitute a miscarriage of justice. *Id.* at 1327. The Tenth Circuit has specified that such a miscarriage of justice can occur only in four discrete situations:

1. Where the district relied on an impermissible factor such as race;

2. Where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;

3. Where the sentence exceeds the statutory maximum; or

4. Where the *waiver* is otherwise unlawful.

*Id.* (emphasis added) (citations omitted). "This list is exclusive: enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of the four situations enumerated above." *United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (internal quotation marks and citations omitted). As for the fourth of these situations – whether the waiver is otherwise unlawful – the Tenth Circuit requires the defendant to bear the burden of demonstrating that "'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[,]' as that test was employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))." *Id.* (brackets in original); *accord United States v. Gonzalez-Huerta*, 403 F.3d 727, 737 (10th Cir. 2005). The Tenth Circuit emphasized in *Polly* that the fourth situation that could result in a miscarriage of justice "looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." 630 F.3d at 1001-02 (emphasis in original) (internal quotation marks and citation omitted).

IV. ANALYSIS

Applying the foregoing principles of law, I recommend that the presiding judge find that Defendant's collateral attack falls within the scope of the collateral attack waiver in his plea agreement. I further recommend that the presiding judge find that Defendant has not carried his burden of demonstrating that his guilty plea or the instant waiver was either involuntary or unknowing. Finally, I recommend that the presiding judge find that Defendant has not carried

his burden of demonstrating that enforcing the waiver will result in a miscarriage of justice.

### A. Defendant's Claims Are within Scope of Waiver

The collateral attack waiver in Defendant's plea agreement read as follows:

> In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance *in negotiating or entering this plea or this waiver*.

Plea Agreement 6 (emphasis added). As written, this waiver comports with the exceptions set out by the Tenth Circuit in *Cockerham*, 237 F.3d at 1187.

By agreeing to this waiver, Defendant gave up his right to collaterally attack his conviction, *except* upon the grounds of counsel's ineffective assistance in the narrow context of negotiating or entering the Defendant's guilty plea or the waiver itself. Yet, Defendant's Motion makes no claim that counsel provided ineffective assistance in negotiating the plea, in entering the guilty plea, or in agreeing to the collateral attack waiver contained in the plea agreement. Therefore, it follows that each of the arguments set forth in Defendant's Motion fall within the scope of the collateral attack waiver.

### B. No Showing that Defendant's Guilty Plea or Waiver Was Involuntary

The defendant bears the burden of presenting evidence that he did not knowingly and voluntarily plead guilty or understand the waiver of collateral attack rights. *Hahn*, 359 F.3d at 1329 (citing *Edgar*, 348 F.3d at 872-73). Defendant has made no such showing here.

Defendant does not assert – anywhere, even in his reply brief – that he would not have pleaded guilty and would have insisted on going to trial, but for his counsel's alleged shortcomings. He similarly does not assert – anywhere, even in his reply brief – that he would not have entered into the plea agreement but for his counsel's allegedly deficient performance. Instead, Defendant argues that the conviction itself should be vacated because over two years

after his plea, *Johnson* invalidated a statutory provision similar to the residual clause of § 924(c). *See* Def.'s Mot. 6-9. Even if I were to recommend that the presiding judge decide that *Johnson* implicitly also invalidated the residual clause under § 924(c) – which I do not – such an invalidation would not affect Defendant's collateral attack waiver. As the Tenth Circuit has stated:

> The essence of plea agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters. One such risk is a favorable change in the law. To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system.

*United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005). This is exactly what Defendant asks this Court to do – invalidate a plea agreement he knowingly and voluntarily entered into based on a subsequent and (arguably) favorable change in the law, even though he assumed that risk as part of entering into the plea. I recommend that the presiding judge reject Defendant's request.

In addition to Defendant having done nothing to attempt to meet his burden, the record is replete with evidence that Defendant knowingly and voluntarily entered into the plea agreement. During the plea colloquy, Defendant denied being under the influence of any drugs or alcohol, or having any condition that interfered with his understanding of the proceedings. Plea Hr'g Tr. 3:4-9, 17-22. Defendant also told the Court that he had read the plea agreement and discussed it with his attorney before signing it. *Id.* 4:20-24. Defendant twice stated that he understood the terms of the Plea Agreement. *Id.* 5:3-5, 14-16. The Court twice confirmed with Defendant that he and the United States had agreed to a specific sentence of 84 months. *Id.* 6:5-9, 8:6-10. The Court asked Defendant whether he understood "the possible consequences of entering into this

Plea Agreement," and Defendant said yes. *Id.* 10:22-25. Crucially for Defendant's Motion, the Court asked Defendant whether he realized that as part of the Plea Agreement, Defendant was "waiving or giving up [his] right to appeal this plea - - to appeal the sentence as long as I impose the agreed-upon sentence?" *Id.* 12:9-12. Defendant stated, "Yes." *Id.* 12:13. Ultimately, the Court imposed the agreed-upon sentence. *Id.* 21:1-3.

### C. Enforcing the Waiver Will Not Result in Miscarriage of Justice

As set forth above,[4] *Hahn* enumerated four situations in which enforcing an appellate or collateral attack waiver would constitute a miscarriage of justice. 359 F.3d at 1327. Analyzing them individually for applicability to this case, I can quickly rule out that the presiding judge relied on any impermissible factor, such as race, in determining Defendant's sentence. Indeed, Defendant makes no such claim. Next, at no point in his briefing has Defendant ever criticized his counsel for negotiating the *waiver* that the Government is now seeking to enforce. Third, Defendant's 84-month sentence is the minimum penalty permitted by 18 U.S.C. § 924(c)(1)(A)(ii).

That leaves the fourth and final situation identified by the Tenth Circuit: whether the waiver is otherwise unlawful. *Hahn* does not ask whether the sentence is unlawful given subsequent changes in the law, but whether the *waiver itself* is otherwise unlawful. *See* 359 F.3d at 1327. In order for the waiver to be otherwise unlawful, the alleged error *as it relates to the waiver* "must seriously affect the fairness, integrity or public reputation of judicial proceedings as that test was employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)." *Id.* (internal quotation marks, citation, and alteration omitted).

Defendant relies on the Tenth Circuit's decision in *Madrid* for the proposition that "[t]he Tenth Circuit has already held that a sentence imposed under the residual clause constitutes a

---

[4] *See supra*, p.8.

miscarriage of justice under the *Olano* test." Def.'s Reply 8. In *Madrid*, the Tenth Circuit concluded that the defendant's prior conviction for statutory rape could not be considered a crime of violence under the residual clause of the sentencing guidelines, § 4B1.2(a), because that residual clause was unconstitutionally vague, and thus the defendant's enhanced sentence due to his classification as a career offender was plain error. 805 F.3d at 1207-12.

Defendant's reliance on *Madrid* is misplaced. First, the U.S. Supreme Court abrogated *Madrid* in *Beckles v. United States*, ___ U.S. ___, 137 S.Ct. 886, 894-95 (2017), when it concluded that the sentencing guidelines "are not amenable to a vagueness challenge" and that § 4B1.2(a)'s residual clause "is not void for vagueness." Second, having held that the residual clause of § 4B1.2 was unconstitutionally vague, *Madrid* considered whether the defendant forfeited his right to object to his sentence by failing to assert below that § 4B1.2(a) was vague. 805 F.3d at 1211. Forfeiture is the failure to timely object to the violation of a right. *See Olano*, 507 U.S. at 733. Waiver, on the other hand, is the "intentional relinquishment or abandonment of a known right." *Id.* (internal quotation marks omitted). Here, Defendant intentionally relinquished his right to collaterally attack his conviction, even in the event there was a subsequent and favorable change in the law that might affect his sentence. Because *Madrid* did not involve a knowing and voluntary waiver, whatever precedential value it may still have is not applicable here.

Defendant relies on the *Daugherty* decision, 2016 WL 4442801, for the same point. *See* Def.'s Reply 7-10. But that case, too, has lost substantially all of whatever persuasive force it might once have had. In *United States v. Frazier-LeFear*, 665 F. App'x 727, 732 (10th Cir. 2016) (unpublished), the Tenth Circuit specifically criticized the *Daugherty* decision, stating that "[t]he analytical mistake in *Daugherty*" stems from Tenth Circuit precedent "explaining [that]

*Hahn*'s fourth miscarriage-of-justice exception makes it clear that it is the *waiver*, not some other aspect of the proceeding, that must be unlawful to undermine the waiver." (emphasis added)

In *Frazier-LeFear*, the Tenth Circuit also considered whether the enforcement of a collateral attack waiver contained in a defendant's plea agreement would constitute a miscarriage of justice. *Id.* at 731. Ultimately, *Frazier-LeFear* concluded that enforcement of the defendant's waiver "to preclude her *Johnson*-based sentencing challenge would not entail a miscarriage of justice." *Id.* The court also specifically held that the defendant's "*Johnson*-based challenge to the career-offender enhancement is a challenge to the lawfulness of her sentence, not to the lawfulness of her waiver," and that under Tenth Circuit precedent, "it does not provide a basis for holding enforcement of the waiver to be a miscarriage of justice." *Id.* at 732.

I recommend that the presiding judge find and conclude that enforcing the waiver in this case will not constitute a miscarriage of justice because Defendant has not proven that his counsel's ineffectiveness led to sentencing error that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Hahn*, 359 F.3d at 1329.[5]

## V. CONCLUSION

Defendant's claim that a subsequent and favorable change in the law has made the waiver of his collateral attack rights otherwise unlawful is foreclosed by the waiver. As the Tenth

---

[5] There is still another reason why enforcing the waiver does not constitute a miscarriage of justice in this case. If Defendant had pleaded guilty *only* to the Hobbs Act charges (Counts 1 and 2) in the indictment, his guideline sentence for those crimes would have been virtually identical to the 84-month sentence he received for Count 3. The guideline analysis would have begun with base offense level 20. U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(a) (U.S. SENTENCING COMM'N 2016). There would have been a 6-level increase for use of a firearm under section 2B3.1(b)(2)(B) and at least a 4-level increase under section 2B3.1(b)(3)(B) for inflicting serious bodily injury on the Loss Prevention Officer. Assuming a 3-level reduction for acceptance of responsibility, the adjusted offense level would have been at least 27. § 3E1.1. Matrixed with a Criminal History Category I, the resulting guideline range would have been 70-87 months, even before the Court considered whether to depart or vary upward based on underrepresented criminal history category, violent street gang ties, multiple victims, endangering the public in the parking lot of a busy store, and other aggravating circumstances. *See* § 5A. Given that the sentence he received is indistinguishable from (if not less than) the sentence he would doubtless have received on the Hobbs Act charges to which he has never offered a defense or an objection, there can be no miscarriage of justice in enforcing his waiver here.

13

Circuit has pointed out, this is precisely the type of risk that Defendant assumed when he entered into the plea agreement with the United States. *See Porter*, 405 F.3d at 1145. Furthermore, Defendant has not met his burden of showing that his guilty plea or the waiver of collateral attack rights was involuntary or unknowing or that his counsel was in any way ineffective. Lastly, it is clear that enforcing the waiver and dismissing the instant motion will not constitute a miscarriage of justice under governing law. Accordingly, I recommend that the presiding judge enforce the waiver.

For the foregoing reasons, I **RECOMMEND** that Defendant's Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE.** I further recommend that a certificate of appealability be **DENIED**.

**IT IS SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**